IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**EVERGREEN ENVIRONMENTAL PARTNERS, LLC**                                **PLAINTIFF**

V.                                                              CAUSE NO. _____

**MESA UNDERWRITERS SPECIALTY INSURANCE
COMPANY and SELECTIVE INSURANCE COMPANY
OF AMERICA**                                                              **DEFENDANTS**

## COMPLAINT

Plaintiff, Evergreen Environmental Partners, LLC, files this complaint against Defendants Mesa Underwriters Specialty Insurance Company and Selective Insurance Company of America and in support thereof shows as follows:

### NATURE OF THE ACTION

1. Plaintiff Evergreen Environmental Partners, LLC brings this action seeking damages for breach of contract, insurance coverage by waiver and/or estoppel, bad faith denial of coverage, reformation of contract, and for violations of Title 27, Section 10 of the Alabama Code of 1975, which places strict limits on the conduct and representations of unauthorized foreign insurers and their agents and representatives that issue and deliver insurance policies in the State of Alabama.

2. A jury trial is demanded.

### PARTIES

3. Evergreen Environmental Partners, LLC ("Evergreen") is an Alabama limited liability company. Evergreen is solely owned by Meridian Waste Alabama, LLC, a Delaware limited liability company. Meridian Waste Alabama, LLC is solely owned by Meridian Waste

Acquisitions, LLC, a Delaware limited liability company. Meridian Waste Acquisitions, LLC is solely owned by Meridian Waste Intermediate II, LLC, a Delaware limited liability company. Meridian Waste Intermediate II, LLC, is solely owned by Meridian Waste Holdings, LLC, a Delaware limited liability company. Meridian Waste Holdings, LLC, is solely owned by WEP Solid Waste Investment LLC, a Delaware limited liability company. WEP Solid Waste Investment LLC is co-owned by WEP II-A Solid Waste Co-Investment Splitter, L.P., a Delaware limited partnership, and Warren Equity Partners II-A Splitter (Solid Waste), L.P., a Delaware limited partnership. WEP II-A Solid Waste Co-Investment Splitter, L.P. is solely owned by WEP II-A Solid Waste Co-Investment Blocker, Inc., a Delaware corporation. Warren Equity Partners II-A Splitter (Solid Waste), L.P. is solely owned by Warren Equity Partners II-A Blocker (Solid Waste), Inc., a Delaware corporation.

4. Mesa Underwriters Specialty Insurance Company ("MUSIC") is a New Jersey Stock Company with its principal place of business in Arizona. MUSIC may be served with process through the Commissioner of Insurance of the State of Alabama as its statutory agent for service of process pursuant to Ala. Code § 27-10-33 and Ala. Code § 27-10-51.

5. Selective Insurance Company of America is a New Jersey Corporation, with its principal place of business in New Jersey and is registered to transact business in the state of Alabama. It may be served with process through its registered agent for service of process CSC Lawyers Incorporating SVC Inc., at 150 South Perry Street Montgomery, Alabama 36104.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over Evergreen's claims pursuant to 28 U.S.C. § 1332, as all parties are diverse and the amount in controversy exceeds $75,000.00.

7.      Venue is proper in this judicial district as MUSIC delivered the insurance policy at issue in this district, the policy provided coverage to property located wholly in this district, and the events giving rise to the claims at issue in this action occurred within this judicial district.

## FACTUAL ALLEGATIONS

8.      Evergreen is a nonhazardous integrated solid waste services company primarily operating in Alabama. Evergreen maintains and operates a solid waste transfer station located at 4583 Pryor Road in Madison Alabama (the "Transfer Station").

9.      At all times relevant to this dispute, the Transfer Station was insured by a Commercial Insurance Policy No. MP003100710028200 (the "Policy") issued and delivered by MUSIC. A true and correct copy of the Policy is incorporated by reference and attached hereto as Exhibit 1. The Policy was effective for a term beginning March 26, 2024 and ending March 26, 2025.

10.     To obtain property insurance for the Transfer Station, Evergreen submitted to MUSIC a Commercial Insurance Application (the "Application") dated March 26, 2024. A true and accurate copy of the Application is incorporated by reference and attached hereto as Exhibit 2. In its Application, Evergreen represented and specified that it was seeking $1,250,000.00 of property coverage—excluding losses for theft—and $400,000.00 of business income interruption coverage. Evergreen also specified that its primary business was "Landfill Operations" and that the property for which it sought coverage was a 15,150 square foot Transfer Station. *See generally* Exhibit 2. Evergreen's Application explicitly provided that the Transfer Station was not equipped with any Fire Protection System, nor Fire Alarm. *See id.*

11. On the same date Evergreen submitted the application—March 26, 2024—MUSIC issued and delivered the Policy, which provided property and business interruption coverage for the Transfer Station.

12. The Policy includes the statement that "[t]his contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law." *Id.* at 2. However, the policy does not include the name and license number of the licensed surplus lines broker who procured the policy. *Id.* Based on information maintained by the Alabama Secretary of State, upon information and belief, MUSIC is not registered to transact business in the State of Alabama. Based on information maintained by the Alabama Department of Insurance, based on information and belief, MUSIC is not authorized to transact insurance in the State of Alabama.

13. On November 1, 2024, during the Policy term, a fire caused significant damage to the Transfer Station and materially disrupted Evergreen's operations dependent thereon (the "Fire"). Shortly thereafter and in accordance with the Policy provisions, Evergreen timely submitted a claim to MUSIC for the property damage and business interruptions caused by the Fire.

14. By letter dated November 11, 2024 MUSIC reserved its rights to deny coverage and represented that it was investigating the claim. A true and correct copy of MUSIC's reservation of rights letter is attached hereto as Exhibit 3. MUSIC did not dispute that loss by fire is generally covered under the terms of the Policy.

15. Following numerous inquiries by Evergreen, and more than 100 days after Evergreen submitted its claim for coverage, MUSIC denied coverage on February 13, 2025. A true and correct copy of MUSIC's denial letter is attached hereto as Exhibit 4. MUSIC claimed via its adjuster, that the Policy provides no coverage for Evergreen's loss because the Policy's "Protective

Safeguard endorsement requires an Automatic Fire Alarm at the loss location as a condition to insurance coverage." And, "the loss location did not have the required Automatic Fire Alarm at the time of the fire." On this ground, MUSIC contends "the Policy does not afford coverage for the fire loss." *See* Exhibit 4.

16. The Policy provision at issue, titled "PROTECTIVE SAFEGUARDS" (the "PSE") provides that as "a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above." Exhibit 1 at 49–50. The PSE further provides that coverage will not be provided if Evergreen "[k]new of any impairment in any protective safeguard listed in the Schedule above and failed to notify [MUSIC] of that fact" or if Evergreen "failed to maintain any protective safeguard . . . over which" Evergreen "had complete control, in complete working order." *See id.*

17. Despite Evergreen clearly indicating to MUSIC in the Application that the Transfer Station did not have an automatic fire alarm, the PSE Schedule lists "P-2" as an applicable safeguard. "P-2" is defined by the Policy as an "Automatic Fire Alarm protecting the entire building[.]" *Id.*

18. On February 25, 2025, counsel for Evergreen demanded the coverage owed under the Policy. A true and accurate copy of Evergreen's demand for coverage is attached hereto as Exhibit 5. On March 4, 2025, MUSIC again denied coverage, claiming the Policy was conditioned upon the maintenance of a Fire Alarm under the terms and conditions of the PSE. A true and accurate copy of MUSIC's Second Denial Letter is attached hereto as Exhibit 6.

19. To date, MUSIC has failed and refused to provide coverage under the Policy.

## COUNT I:
## BREACH OF CONTRACT FOR INSURANCE

20. Evergreen incorporates each and every allegation set forth above.

21. The Policy constitutes a valid and binding contract between MUSIC and Evergreen.

22. Evergreen fully performed its obligations under the Policy through its timely payment of premiums, taxes and the inspection fee owed. Evergreen fully performed its obligations under the Policy with respect to the PSE by notifying MUSIC that the insured premises—the Transfer Station—contained no Fire Alarm.

23. The PSE does not require Evergreen to *install* a Fire Alarm but merely to "maintain" any such equipment or to notify MUSIC of any "suspension or impairment" of such equipment, in the event it has been installed. At best for MUSIC, the term "maintain" in this context is ambiguous and should be construed against MUSIC, the Policy's drafter.

24. Despite Evergreen's good faith performance of all contractual obligations, MUSIC has willfully and materially breached its obligations under the Policy by failing to provide coverage for Evergreen's loss.

25. As a result of MUSIC's breach, Evergreen has been damaged in an amount not less than the amount of coverage afforded under the Policy had MUSIC complied with its obligations.

## COUNT II:
## COMMON LAW BAD FAITH

26. Evergreen incorporates each and every allegation set forth above.

27. MUSIC breached the Policy by intentionally denying benefits owed to Evergreen under the terms of the Policy.

28. MUSIC's denial is without any arguable, reasonable, or good faith basis based on the terms of the Policy.

29. MUSIC was and is aware that its denial is contrary to the terms of the Policy and not supported by any arguable basis in fact or law.

30. MUSIC's denial constitutes bad faith and has damaged Evergreen.

## COUNT III:
## COVERAGE BY ESTOPPEL AND/OR WAIVER

31.   Evergreen incorporates each and every allegation set forth above.

32.   In the alternative to Counts I and II, Evergreen asserts a claim for coverage by estoppel and/or waiver.

33.   In support of its coverage denial, MUSIC alleges the existence of an automatic fire alarm was a condition of the policy's issuance.

34.   MUSIC had actual knowledge that the Transfer Station was not equipped with a fire alarm because Evergreen's Application indicated no such alarm was in place. MUSIC thus had knowledge of facts that would have allowed MUSIC to rescind or refuse to issue the Policy. MUSIC nonetheless accepted premiums from Evergreen and treated the Policy as if it was in force.

35.   MUSIC's acts and omissions in treating the Policy as valid and accepting the payment of premiums from Evergreen has materially harmed Evergreen, which relied in good faith on MUSIC's conduct.

36.   Having received and retained the benefit of Evergreen's good faith performance, MUSIC has waived the conditions to insurance contained in the PSE.

37.   MUSIC's acceptance of Evergreen's premium payments with knowledge that no automatic fire alarm was in place was intended to or reasonably likely to lead Evergreen into treating the Policy as existing in full force and providing coverage based on the condition of the Transfer Station as it existed at the time Evergreen submitted its Application.

38.   Having induced Evergreen to treat the Policy as providing coverage to the Transfer Station as is existed, MUSIC is estopped from changing its position to Evergreen's detriment.

39.   MUSIC's conduct has damaged Evergreen in an amount not less than the amount of coverage afforded under the Policy.

## COUNT IV:
## REFORMATION OF CONTRACT

40. Evergreen incorporates each and every allegation set forth above.

41. In the alternative to Counts I and II, Evergreen seeks to reform the Policy to conform to the parties' expectations. Evergreen sought insurance coverage based on the condition of the Transfer Station as it existed at the time it submitted its Application.

42. MUSIC was aware of Evergreen's intention to secure insurance by the contents of Evergreen's Application. MUSIC was further aware that Evergreen's Transfer Station did not contain a Fire Alarm at the time it issued and delivered the Policy to Evergreen.

43. Evergreen mistakenly believed its Transfer Station complied with all terms and conditions of the coverage it sought given the disclosures of the Application.

44. MUSIC acted inequitably or fraudulently by including the PSE within the Policy with knowledge that the Transfer Station was not equipped with an automatic fire alarm.

45. Under the circumstances, MUSIC's inequitable conduct requires that the Policy to be reformed to reflect the parties' true intent at the time of contracting.

## COUNT V:
## STATUTORY LIABILITY PURSUANT TO
## ALA. CODE § 27-10-2

46. Evergreen incorporates each and every allegation set forth above.

47. Upon information and belief, MUSIC issued and delivered an insurance Policy in the State of Alabama without possessing a valid certificate of authority to transact business in the state or a certificate of authority to transact insurance in the state.

48. An unauthorized foreign insurer may only deliver a policy for coverage in Alabama in strict compliance with Alabama's surplus line insurance law. "Surplus lines insurance coverage is issued when insurance coverage cannot be procured from authorized insurers on terms

acceptable to the insureds; in such an event, certain unauthorized insurers may sell insurance to Alabama citizens through a properly licensed surplus lines broker. *See* § 27–10–20." *Custard Ins. Adjusters, Inc. v. Youngblood*, 686 So. 2d 211, 213 (Ala. 1996).

49.     Because surplus lines are not regulated by the Alabama Department of Insurance, Alabama's Surplus Line Insurance Law depends heavily on the use of licensed surplus line brokers. Surplus line brokers are subject to qualifications above and beyond those applicable brokers placing coverage with authorized insurers. *See* Ala. Code § 27-10-24. Under Alabama law surplus lines coverage provided by an unauthorized insurer must be stamped with a message that "[t]his contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law." *See* Ala. Code § 27-10-22. Moreover, and more importantly, every such contract must "bear the name and license number of the surplus line broker who procured it[.]" *Id.*

50.     The Policy at issue includes the phrase above, making clear the contract was provided under the Alabama Surplus Line Insurance Law. *See* Exhibit 1 at 2. The Policy also includes a fillable space under which the name and license number of the surplus line broker who procured the Policy is meant to be affixed. *Id.* The Policy, however, does not include the name and license number of the surplus line broker:

```
Named Insured:
Evergreen Environmental Partners LLC
DBA:

Mailing Address:
4583 Pryor Rd

Madison                              AL 35756

Agent and Mailing Address:        Agent Number: 31007
31007-DGA Insurance Services LLC
One Liberty Plaza, Suite 1900
New York                          NY 10006
Tax State: AL      State Control Number (NJ & PA):

Surplus Lines Broker Name:     Surplus Lines Broker Number:
```

This contract is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law.

51. Accordingly, the Policy did not comply with Alabama's Surplus Lines Insurance Law and was unlawfully delivered. Pursuant to Ala. Code § 27-10-2, MUSIC is liable for Evergreen's loss under the unlawful Policy.

52. Further, the adjuster retained by MUSIC is liable for Evergreen's loss. Alan Kidd is an adjuster employed by Selective Insurance Company of America ("Selective"), which was retained by MUSIC to adjust Evergreen's claim. *See* Ex. 3 at 1 (identifying Alan Kidd as adjuster "employed by Selective Insurance Company of America, which is handling this claim on behalf of" MUSIC); Ex. 4 at 1 (same). Pursuant to Ala. Code § 27-10-2, "[a]ny independent adjuster who, directly or indirectly, investigates any loss arising under an insurance or annuity contract issued by an unauthorized insurer and covering a subject of insurance located or performed in this state shall be liable for the full amount of any loss suffered by the insured under the contract."

53. Likewise, "[a]ny person who willfully represents or aids an unauthorized insurer in violation of Section 27-10-1, in addition to any other applicable penalty, shall be liable for the full amount of any loss sustained by the insured under any such contract[.]" *Id.*

54. Mr. Kidd was acting as an agent of MUSIC and/or Selective, and in the course and scope of his employment with Selective when investigating Evergreen's claim. Mr. Kidd and Selective willfully aided MUSIC by directly or indirectly investigating and denying Evergreen's loss under the Policy—a policy that did not comply with Alabama's Surplus Lines Insurance Law.

55. Under Ala. Code § 27-10-2, the adjuster and his employer are liable for Evergreen's loss under the Policy.

## REQUEST FOR RELIEF

ACCORDINGLY, Evergreen respectfully requests all relief referenced in this Complaint, including that the Court enter an order finding:

a. MUSIC liable for Evergreen's damages sustained as a result of MUSIC's breach of the Policy in an amount to be proven at trial but not less than $1,105,555.78 plus costs, attorneys' fees and pre- and post-judgment interest;

b. MUSIC liable for breaching the Insurance Policy in bad faith and thus liable thus liable for Evergreen's damages in an amount to be proven at trial but not less than $1,105,555.78, plus punitive damages, costs, attorneys' fees and pre- and post-judgment interest;

c. Selective Insurance Company of America liable for Evergreen's damages in an amount to be proven at trial but not less than $1,105,555.78, plus costs, attorneys' fees and pre- and post-judgment interest;

d. Alternatively, that MUSIC is equitably estopped from enforcing the Protective Safeguard Endorsement and is thus liable for Evergreen's damages an amount to be proven at trial but not less than $1,105,555.78;

e. Alternatively, that the Policy shall be reformed to reflect the parties' true intent of proving coverage to Evergreen's Transfer Station in light of Evergreen unilateral mistake and MUSIC's inequitable and fraudulent conduct; and

f. Grant any such other relief that it deems just and proper.

Respectfully submitted, on this the 20th day of May 2025.

Respectfully submitted,

**EVERGREEN ENVIRONMENTAL PARTNERS, LLC**

By: /s/ Scott F. Singley
One of its Attorneys


OF COUNSEL:

Scott F. Singley, ASB No. SIN019
Brunini, Grantham, Grower & Hewes, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
ssingley@brunini.com