

L. KYLE WILLIAMS

E-mail: kwilliams@brunini.com
Direct: 601.973.8731

The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Telephone: 601.948.3101

Post Office Drawer 119
Jackson, Mississippi 39205

Facsimile: 601.960.6902

February 21, 2025

Mesa Underwriters Specialty Insurance Co.
7955 S Priest Drive, Suite 102
Tempe, Arizona 85284
U.S. Certified Mail # 7022 3330 0001 1151 4687
MUSICINFO@music-ins.com

*VIA ELECTRONIC & CERTIFIED MAIL*

Alabama Department of Insurance
Post Office Box 303351
Montgomery, Alabama 36130-3351
U.S. Certified Mail # 7022 3330 0001 1151 4670
ConsumerServices@insurance.alabama.gov

Re:  **Demand for Payment of Claim on Commercial Property Insurance Policy**
     **Policyholder:**  Evergreen Environmental Partners, LLC
     **Claim No.:**     22689707

Dear Claims Department:

This firm represents Evergreen Environmental Partners, LLC ("**EEP**"), which is insured under a commercial property insurance policy—Policy MP00310071002820000 (the "**Policy**")—issued by Mesa Underwriters Specialty Insurance Company ("**MUSIC**"). On November 1, 2024, during the term of the Policy, a fire caused significant damage to EEP's facility located at 4583 Pryor Road, Madison, Alabama. EEP submitted a claim—Claim No.: 22689707 (the "**Claim**")—for coverage under the Policy's property and business income provisions.

By letter dated November 11, 2024, MUSIC reserved its rights and purportedly investigated the Claim. After more than 100 days, following numerous inquiries by EEP regarding the status of the Claim, MUSIC denied coverage on February 13, 2025.[1]

According to MUSIC's General Adjustor assigned to the Claim, the Policy provides no coverage for EEP's loss because "[t]he Protective Safeguard endorsement requires an Automatic Fire Alarm at the loss location as a condition to insurance coverage." And, "the loss location did not have the required Automatic Fire Alarm at the time of the fire." On this ground, MUSIC contends "the Policy does not afford coverage for the fire loss."

---

[1] A copy of Mesa's reservation of rights letter and denial letter are enclosed for your reference.

04635046


EXHIBIT 5

Mesa Underwriters Specialty Insurance Co.
February 21, 2025
Page 2

For numerous, independent reasons, the Policy covers EEP's loss, and the Claim—well below policy limits—should be paid in full and without further delay.

### 1. Applicable Policy Language

Relevant to MUSIC's denial of the Claim, the Policy provides the following endorsement to the Commercial Property Coverage:

## PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises No. | Building No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 001 | 001 | P-2 |

Describe Any "P-9":

A. The following is added to the Commercial Property **Conditions:**

**Protective Safeguards**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

. . .

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

a. Connected to a central station; or

b. Reporting to a public or private fire alarm station.

. . .

**"P-9"**, the protective system described in the Schedule.

04635046

Mesa Underwriters Specialty Insurance Co.
February 21, 2025
Page 3

> **B. The following is added to the Exclusions section of:**
>
> Causes Of Loss – Basic Form
> Causes Of Loss – Broad Form
> Causes Of Loss – Special Form
> Mortgageholders Errors And Omissions Coverage Form
> Standard Property Policy
>
> We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:
>
> **1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
>
> **2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

*See* CP 04 11 10 12.

> 2. **The Protective Safeguards endorsement does not condition coverage on the *installation* of an automatic fire alarm.**

The Protective Safeguards endorsement provides that "as a condition of this insurance", EEP is "required to **maintain**" an "Automatic Fire Alarm, protecting the entire building" that is "listed in the Schedule above" and is either "[c]onnected to a central station" or "[r]eporting to a public or private alarm station." Neither the Schedule in the endorsement nor the Declarations list or identify any Automatic Fire Alarm to which the endorsement would be applicable. EEP had no obligation under this endorsement or exclusion language to *install* a fire alarm of any type. Rather, it was merely obligated to "maintain" any Automatic Fire Alarm. The term "maintain" presupposes that such an alarm is present, and it would be an impossibility to maintain equipment that is not present.

"If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Great Am. Ins. Co. v. PowerSouth Energy Coop.*, 707 F. Supp. 3d 1205, 1218 (S.D. Ala. 2023) (quoting *Safeway Insurance Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005)). Black's Law Dictionary defines the term "maintain" as follows, relevant to this matter: "1. To continue (something). 2. To continue in possession of (property, etc.) . . . 4. To care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep . . . ." *Maintain*, Black's Law Dictionary (12th ed. 2024). Merriam-Webster similarly defines the term as "1: to keep in an existing state (as of repair, efficiency, or validity) : preserve from failure or decline . . . ."[2] These definitions clearly relate to upkeep, maintenance. No person of ordinary intelligence would construe the term "maintain" in this context to encompass the affirmative duty to install equipment.

---

[2] https://www.merriam-webster.com/dictionary/maintain?src=search-dict-box.

Mesa Underwriters Specialty Insurance Co.
February 21, 2025
Page 4

At best for MUSIC, and as many courts have found under varying circumstances, the term "maintain" used throughout the Protective Safeguards endorsement (both the condition and exclusion) is ambiguous. *See, e.g., Five Star Hotels, LLC v. Ins. Co. of Greater New York*, 2011 WL 1216022, at *5 (S.D.N.Y. Mar. 24, 2011); *Breton, LLC v. Graphic Arts Mut. Ins. Co.*, 446 F. App'x 598, 603 (4th Cir. 2011). In such case, "all ambiguities must be resolved against the insurance company." *Great Am. Ins. Co.*, 707 F. Supp. 3d at 1218.

EEP had no obligation under the Policy to install an Automatic Fire Alarm at its facility, and MUSIC's denial of the Claim is erroneous.

### 3. MUSIC waived its right to deny coverage based on the Protective Safeguards endorsement.

Even if the term "maintain" is unambiguous and required EEP to affirmatively install an Automatic Fire Alarm (it did not), MUSIC has waived its right to enforce the Protective Safeguards endorsement. MUSIC was on notice that an Automatic Fire Alarm had not been installed on EEP's property. Notwithstanding, MUSIC continued to accept premium payments and has, therefore, waived the right to deny EEP's Claim based on the Protective Safeguards endorsement.

*First*, the Commercial Insurance Application approved by EEP makes clear that no fire alarm had been installed at EEP's property:

| FIRE ALARM MANUFACTURER | | CENTRAL STATION |
|---|---|---|
| | | LOCAL GONG |

MUSIC had no reason to believe EEP's facility had an Automatic Fire Alarm, and based on the Application, MUSIC knew that such equipment had not been installed.

*Second*, within the Protective Safeguards endorsement Schedule is space to "Describe Any 'P-9'". P-9 is defined as "the protective system described in the Schedule."

**SCHEDULE**

| Premises No. | Building No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 001 | 001 | P-2 |
| Describe Any "P-9": | | |

A description of any Automatic Fire Alarm MUSIC believed to have been installed at EEP's facility is noticeably missing. This lack of description—consistent with the Application not identifying any such system—further demonstrates that MUSIC was on notice that an Automatic Fire Alarm had not been installed at EEP's facility.

*Finally*, the Policy declarations show that MUSIC charged a $175.00 "Inspection Fee", payable by EEP. If MUSIC performed the inspection that it represented it would perform and

04635046

Mesa Underwriters Specialty Insurance Co.
February 21, 2025
Page 5

that EEP paid for, such inspection would have shown the absence of an Automatic Fire Alarm. It makes no matter whether MUSIC read the inspection report, if one exists, as the knowledge of its inspector is imputed to MUSIC. *See Westfield Ins. Co. v. Enter. 522, LLC*, 34 F. Supp. 3d 737 (E.D. Mich. 2014); *Joy v. AmGuard Ins. Co.*, 627 F. Supp. 3d 928 (W.D. Tenn. 2022), *aff'd*, No. 22-5811, 2023 WL 5377808 (6th Cir. Aug. 22, 2023) (finding agent's knowledge of lack of automatic sprinklers was imputed to insurer and, thus, coverage was compelled).

The fact that MUSIC continued to accept premium payments, with knowledge that no Automatic Fire Alarm had been installed at EEP's facility and that MUSIC would deny coverage on that basis obviously constitutes bad faith and fraud. Similarly, if MUSIC failed to perform the inspection, such failure would support causes of action for negligence, misrepresentation, and fraudulent misrepresentation, without limitation.[3]

### DEMAND FOR PAYMENT OF CLAIM, DOCUMENT PRODUCTION AND RETENTION

Pursuant to the foregoing, EEP's loss is covered by the Policy, and the Protective Safeguards endorsement does nothing to affect coverage. The plain language of the Protective Safeguards endorsement does not require EEP to install an Automatic Fire Alarm. Even if it did, MUSIC was on notice that no such equipment had been installed at EEP's facility, waving MUSIC's right to deny coverage based on the Protective Safeguards endorsement. Accordingly, EEP demands that MUSIC withdraw its denial of the Claim and make immediate payment under the Policy, as follows:

| | |
|---|---|
| Commercial Property | $705,557.78 |
| Business Income | $400,000.00 |
| **TOTAL** | **$1,105,557.78** |

EEP further demands that MUSIC produce a copy of any reports or documents in its possession, custody, or control related to any inspection of EEP's facility. This request includes such reports and documents in the possession, custody, or control of any of MUSIC's agents, employees, representatives, and contractors.

EEP further demands MUSIC and all of its agents, employees, representatives, and contractors preserve any and all documents, records, and communications regarding EEP, the Policy, the Claim, any inspection of EEP's property, and MUSIC's policies, procedures, and communications regarding the Protective Safeguards endorsement.

Please respond to this correspondence or tender the above amount under the Policy not later than March 1, 2025. Direct any further correspondence regarding this matter directly to me. EEP expressly reserves all of its rights under the Policy, applicable law, and in equity.

---

[3] EEP has requested a copy of the inspection report from MUSIC, to no avail.

04635046

Mesa Underwriters Specialty Insurance Co.
February 21, 2025
Page 6

Sincerely,

**BRUNINI, GRANTHAM, GROWER & HEWES, PLLC**

*L. Kyle Williams*

L. Kyle Williams

Cc: CSC-Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, Alabama 36104

04635046